Filed 9/29/21  In re R.C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| In re R.C. et al., Persons Coming Under the Juvenile Court Law. | B310267 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.M. et al.,<br><br>Defendants and Appellants;<br><br>B.C. et al.,<br><br>Respondents. | (Los Angeles County Super. Ct. Nos. 19CCJP02956A-B) |

APPEAL from orders of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Affirmed.

No appearance for Plaintiff and Respondent.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant S.M.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant L.C.

Estes Law Group and Polly J. Estes for Respondents B.C. and E.C.

Melissa A. Chaitin, under appointment by the Court of Appeal, for Minors.

\* \* \* \* \* \* \* \* \* \*

Mother S.M. and father L.C. appeal the order terminating their parental rights, arguing the court erred when it denied their request for a continuance of the Welfare and Institutions Code section 366.26 hearing to select and implement a permanent plan for their children R.C. and T.C.  (All further statutory references are to this code, unless otherwise indicated.)  They argue a continuance was in the best interest of the children, so that paternal aunt could be assessed for placement.  They do not argue the juvenile court erred in terminating their parental rights, or that the continuance would have any impact on their parental rights.  The children and their de facto parents argue mother and father lack standing to challenge the order, since their parental rights are not implicated by the order.  We agree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because of the narrow issue on appeal, we will limit our discussion of the facts.

This family came to the attention of the Los Angeles County Department of Children and Family Services (Department) in April 2019, following a referral that mother and father abused heroin and methamphetamine, putting the children at risk of harm.  The children were detained in May 2019.  Maternal grandparents, who live in Arizona, had legal guardianship over the children's two older half siblings, and wanted to be considered for placement of R.C. and T.C.

The children were placed with E.C. and her husband B.C. (the foster parents) in June 2019, and were well bonded to their

2

caregivers.  As of the July 2019 jurisdiction/disposition report, mother and father had not identified paternal aunt or any other family member besides the maternal grandparents to consider for placement.

At the July 12, 2019 adjudication/dispositional hearing, mother and father pled no contest to the petition, and the juvenile court sustained allegations based on mother's and father's substance abuse.  The juvenile court ordered reunification services for mother and father.

In September 2019, the juvenile court ordered that an ICPC (Interstate Compact on the Placement of Children) be initiated for maternal grandparents in Arizona.  Initiation of the ICPC was delayed when maternal grandparents wavered on their commitment to care for the children, though they later changed their minds and sought evaluation for placement.

The Department's July 2020 status review report noted that the children continued to thrive with their foster parents.  The children were having phone visits with mother and father, and with maternal grandparents and their half siblings.  The ICPC for maternal grandparents had been conditionally approved, and would receive final approval once maternal grandparents "completed the tasks necessary to apply for licensure . . . ."

The children's foster parents filed a request to be designated as de facto parents.  They also filed a section 388 petition seeking an order formally placing the children in their custody, as they were concerned the children were going to be placed with maternal grandparents.  Maternal grandparents responded with a relative information form, indicating they no longer wanted to adopt the children, as they believed the current foster parents would be "better long term parents."  In September 2020, the juvenile court

3

ordered a hearing on the foster parents' request for de facto parent status, and set the section 388 petition for hearing.

At the September 18, 2020 review hearing, the juvenile court terminated the parents' reunification services, and set a section 366.26 hearing to select and implement a permanent plan.

In October 2020, the juvenile court granted foster parents' status as de facto parents.

The Department filed a response to the de facto parents' section 388 petition, noting that paternal aunt contacted the Department in December 2019. She was interested in adopting the children if they failed to reunify with their parents. In February 2020, paternal aunt again inquired about the children. The social worker informed her that maternal grandparents were being assessed for placement, and paternal aunt stated she was satisfied if the children were placed with other family members. She contacted the Department again in July and October 2020, saying she was interested in having the children placed with her if they were not placed with maternal grandparents. Paternal aunt also resides in Arizona and said she had a close relationship with the children until they were detained. However, the children told social workers they did not remember paternal aunt. The Department recommended the juvenile court initiate an ICPC for paternal aunt.

The juvenile court denied the section 388 petition. However, the court ordered that the children were not to be removed from the de facto parents without a court hearing. The juvenile court also ordered that an ICPC be initiated as to paternal aunt and uncle in Arizona.

Paternal aunt and uncle visited with the children in December 2020. The children were shy at first, but eventually warmed up to them. They were confused about why they had to visit with paternal relatives, and experienced some regression in

4

their behaviors after the visit.  They also began having virtual phone visits.  According to the de facto parents, the children asked to not have phone contact with paternal aunt and uncle.

The Department's January 2021 section 366.26 report stated the Department had initiated the ICPC for paternal aunt and uncle in November 2020.  The children continued to have weekly virtual phone visitation with maternal grandparents and their half siblings.  Paternal aunt also was maintaining weekly FaceTime visits with the children.

The Department recommended continuing the section 366.26 hearing 60 days to allow the ICPC for paternal aunt to be approved.  Paternal aunt and uncle lived close to maternal grandparents, and would ensure that the children maintained contact with maternal grandparents and their siblings.

At the January 14, 2021 section 366.26 hearing, the Department, mother, and father requested a continuance, so that the ICPC could be completed for paternal aunt.  Counsel for the children objected to continuing the hearing, arguing that paternal aunt's request for placement was "conditional" and would only delay permanency for the children.  Paternal aunt was present via WebEx, and asked for an opportunity to "shed a little bit of light" on what had happened, and explained that her request for placement of the children was not conditional.

Children's counsel objected to paternal aunt's statements, arguing she had not been sworn as a witness.  Paternal aunt was willing to be sworn and testify.  The juvenile court did not allow her to testify in support of the request for a continuance, but found her testimony might be relevant to the termination of parental rights, and asked for an offer of proof.  Father argued her testimony was relevant to prove the sibling relationship exception to the termination of parental rights.  The juvenile court found her

5

testimony was irrelevant to the sibling bond exception because the siblings were not placed with paternal aunt.

The juvenile court denied the request for a continuance, finding it would further delay permanency for the children, paternal aunt's interest in the children had been equivocal, and she was only interested in placement after maternal grandparents elected to not proceed with placement. The juvenile court then terminated parental rights. Mother and father timely appealed.

## DISCUSSION

Mother and father contend the juvenile court erred when it denied their request for a continuance to complete the ICPC for paternal aunt and uncle, and by not allowing paternal aunt to testify in support of the request for a continuance. The children and de facto parents argue that mother and father lack standing to challenge the order denying the request for a continuance, reasoning it would have no impact on the termination of their parental rights.[1]

"Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

---

[1] Mother argues the de facto parents lack standing to file a respondent's brief, and argue that the brief should be stricken. Because this argument was raised in mother's reply brief, instead of by motion, affording the de facto parents no meaningful opportunity to respond, we will not address it. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766.)

6

In *In re K.C.,* the child was removed from the parents and placed with a prospective adoptive family.  The juvenile court bypassed reunification services and set a section 366.26 hearing.  The child's grandparents filed a section 388 petition, seeking placement of the child in their home.  At a combined hearing, the juvenile court denied the section 388 petition, selected adoption as the permanent plan, and terminated parental rights.  Father's appeal was dismissed for lack of standing, and our Supreme Court affirmed.  (*In re K.C.*, *supra*, 52 Cal.4th at pp. 234–235, 240.)  The court held father did not have standing to appeal the denial of the grandparents' section 388 petition because he did not contest termination of his parental rights and thus "relinquished the only interest in K.C. that could render him aggrieved by the juvenile court's order declining to place the child with the grandparents." (*In re K.C.*, at p. 238.)

The court explained that until parental rights are terminated, all parents have a compelling interest in the companionship, care, custody, and management of their children.  When dependency proceedings begin, the priority is to preserve family relationships if possible.  (*In re K.C.*, *supra*, 52 Cal.4th at p. 236.)  However, "after reunification services are terminated or bypassed . . . 'the parents' interest in the care, custody and companionship of the child [is] no longer paramount [and] "the focus shifts to the needs of the child for permanency and stability . . . ." ' " (*Ibid*.)

The statutory exceptions to adoption at the section 366.26 hearing "permit the juvenile court not to terminate parental rights when compelling reasons show termination would be detrimental to the child."  (*In re K.C.*, *supra*, 52 Cal.4th at p. 237; see also § 366.26, subd. (c)(1)(B).)  Because the father in *In re K.C.* did not argue there was any exception to the termination of parental rights, "he ha[d] no remaining, legally cognizable interest in [the child's] affairs,

7

including his placement . . . ." (*In re K.C.,* at p. 237.)  "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*Id*. at p. 238.)

Here, although father asserted the sibling bond exception as a reason to permit paternal aunt to testify, neither he nor mother made any attempt to prove the exception.  (*In re Jacob S.* (2002) 104 Cal.App.4th 1011, 1016–1017 [parents carry burden to establish an exception to the termination of parental rights]; see also § 366.26, subd. (c)(1)(B)(v).)  Nor have they argued on appeal that the exception applies, or that remanding for a continuance would have any practical impact on their parental rights other than affording them a new hearing.  Consequently, they cannot show they were aggrieved by the juvenile court's orders, and they lack standing to challenge them.

The juvenile court did not abuse its discretion in denying the request to continue the hearing.  Continuances may only be granted for good cause, and must be in the best interests of the child. (§ 352, subd. (a); *In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810.)

"[W]hen a dependent child has been removed from his or her home, the Legislature expresses a clear preference for placement with a relative, if the home is appropriate and the placement is in the child's best interest.  [Citation.]  The relative placement preference under section 361.3 applies throughout the reunification period.  [Citation.]  In addition, section 361.3 applies after the reunification period where the relative has made a timely request for placement during the reunification period and the child welfare agency has not met its statutory obligations to consider and investigate the relative seeking placement." (*In re Maria Q.* (2018)

8

28 Cal.App.5th 577, 594–595.)  It is axiomatic that the section 361.3 relative placement preference only applies *if a relative requests placement*.  (§ 361.3, subd. (a).)

Although paternal aunt had expressed interest in placement of the children before reunification services were terminated, she only requested placement if maternal grandparents were no longer interested or could not be approved.  Therefore, the juvenile court reasonably concluded that the relative placement preference no longer applied because paternal aunt had not unconditionally requested placement of the children during the reunification period.

**DISPOSITION**

The orders are affirmed.


GRIMES, Acting P. J.


WE CONCUR:


WILEY, J.


OHTA, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9